No. 22-1864

# In the United States Court of Appeals for the Third Circuit

———————————

Consumer Financial Protection Bureau,
*Plaintiff-Appellee*,
*v.*
National Collegiate Master Student Loan Trust, et al.,
*Defendants-Appellants.*

———————————

On Appeal from the United States District Court for the District of
Delaware, No. 1:17-cv-1323
Hon. Stephanos Bibas

———————————

## *AMICUS CURIAE* BRIEF OF SEPARATION OF POWERS CLINIC IN SUPPORT OF APPELLANTS

———————————

JENNIFER L. MASCOTT
R. TRENT MCCOTTER
Separation of Powers Clinic
Gray Center for the Study of the
  Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr.
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu
Counsel for *Amicus Curiae*

## <u>TABLE OF CONTENTS</u>

INTEREST OF THE *AMICUS CURIAE* ................................................... 1

SUMMARY OF THE ARGUMENT ...................................................... 2

ARGUMENT ...................................................................... 3

I.    The District Court Disregarded Several Key Distinctions Between
      this Case and *Collins*. ..................................................... 3

      A.    Unlike in *Collins*, the Government Here Filed a Direct
            Enforcement Action in Federal Court Seeking Significant
            Penalties. ................................................................ 5

      B.    Unlike *Collins*, this Case Involves the Initiation of Action by
            an Agency Led by an Official with Improper Removal
            Protections............................................................... 7

II.   The District Court's Interpretation of *Collins* Is Inconsistent with
      *Collins* Itself .................................................................. 11

III.  The District Court's Test Will Disincentivize Removal Protection
      Challenges ..................................................................... 13

CONCLUSION ..................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ............ 14

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................... 5

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020)... 2

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ................. 2, 5, 7, 8, 9, 10, 11, 12

*Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991) ................ 13

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) ...................................................... 13

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ........................ 5, 6, 7, 10

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ............................... 7

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ...................... 14

**Statutory Provisions**

Judiciary Act of 1789, 1 Stat. 78 .............................................................. 14

## INTEREST OF THE *AMICUS CURIAE*[1]

The Separation of Powers Clinic at the Gray Center for the Study of the Administrative State, located within the Antonin Scalia Law School at George Mason University, was established during the 2021-22 academic year for the purpose of studying, researching, and raising awareness of the proper application of the U.S. Constitution's separation of powers constraints on the exercise of federal government power. The Clinic provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation.

The Clinic has submitted numerous briefs at the Supreme Court and lower courts in cases implicating separation of powers, including litigation challenging action by agencies with supervisory officials subject to removal protections that undermine presidential oversight of the executive branch. *See, e.g.*, *Amicus Curiae* Br. of Separation of Powers Clinic, *Calcutt v. FDIC*, No. 20-4303 (6th Cir. Aug. 1, 2022). Appellants' case is important to *amicus* because it addresses the proper remedies for

---

[1] No counsel for any party has authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Appellants consented to this brief, but Appellee Consumer Financial Protection Bureau refused to provide consent. *Amicus* accordingly has filed a motion for leave to file this brief.

removal protection violations. In particular, *amicus* contends that the District Court did not adequately address the important fact that this case arose as an enforcement action within an agency whose head is not subject to at-will removal by the President. *Amicus* also has an interest in the separation of powers implications of the District Court's determination that to receive a remedy, litigants must conclusively show a challenged agency action "would not have been taken but for the President's inability to remove the agency head." This determination is inconsistent with the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and will strongly disincentivize future challenges to unconstitutional removal protections.

## SUMMARY OF THE ARGUMENT

Separation of powers is "aimed at more than an abstract division of labor between the branches of government: The structural principles secured by the separation of powers protect the individual as well." *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 156 (3d Cir. 2020) (internal quotation marks omitted). This Court should reject the District Court's stringent test for obtaining judicial relief where an enforcement action was initiated by an agency led by an official with

unconstitutionally constraining removal protections. A contrary ruling would disincentivize parties from raising such challenges and leave unconstitutional removal schemes to fester, with longstanding detrimental consequences for the balance of power among Congress, the judiciary, and the executive.

## ARGUMENT

Relying on an overreading of *Collins*, the District Court held that a party subject to an enforcement action initiated under the supervision of an agency head with unconstitutional tenure protections could obtain judicial relief only where the challenger conclusively shows that "the agency action would not have been taken but for the President's inability to remove the agency head." JA5–6.

The District Court's test disregards several key aspects in which this case differs from *Collins*; *see* Part I, *infra*; is in tension with *Collins* itself, *see* Part II, *infra*; and will disincentivize challenges to unconstitutional removal regimes, *see* Part III, *infra*.

## I.   The District Court Disregarded Several Key Distinctions Between this Case and *Collins.*

When addressing remedies, the District Court relied extensively on the Supreme Court's opinion in *Collins* but failed to give adequate weight

to several key distinctions between that case and this litigation. Most notably, unlike this case, *Collins* was not a direct enforcement action filed in federal court by the government but instead was a suit initiated by private parties collaterally attacking a previously negotiated settlement. *See* Part I.A, *infra*. Second, *Collins* involved the mere *continuation* of agency conduct that had been initiated when the agency head *was* subject to at-will presidential removal, whereas this case involves agency action *initiated* when the agency head was *not* subject to the constitutional accountability mechanism of at-will removal.

The filing and initiation of enforcement matters are critical executive actions that must be subject to constitutional accountability constraints. The supervisory structure impacting the agency head at the time of these key actions has constitutionally significant import. The absence of presidential oversight here, at core significant phases of the challenged action, generates a much closer nexus between that action and the unconstitutional agency structure, making the requiring remedial showings in *Collins* not directly on point in this case. Presidential oversight is critical as a constitutional matter, for the proper and lawful exercise of government authority. The complete absence of

such oversight here makes *Collins* a poor fit for addressing the proper remedy in this case.

### A. Unlike in *Collins*, the Government Here Filed a Direct Enforcement Action in Federal Court Seeking Significant Penalties.

The Supreme Court has long indicated that Article II's requirement of presidential supervision is at its zenith when executive officers exercise quintessential executive powers, and "seek[ing] daunting monetary penalties against private parties on behalf of the United States in federal court" is one such "quintessentially executive power." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2200 (2020); *see Buckley v. Valeo*, 424 U.S. 1, 138 (1976) ("A lawsuit is the ultimate remedy for a breach of the law, and it is to the President … that the Constitution entrusts th[is] responsibility.").

In *Collins*, no enforcement action was at issue, let alone one filed by the government in federal court. Rather, the private parties there initiated a suit ***against*** the government, seeking an injunction requiring the Treasury to return certain payments that had been made pursuant to a negotiated agreement between the Treasury and mortgage financers Fannie Mae and Freddie Mac. 141 S. Ct. at 1770, 1775. *Collins*, in other

words, was initiated by a private party launching what amounted to a collateral attack on a completed government settlement, eliminating the constitutional urgency of structurally sound removal protections that is in play when an agency makes the significant and weighty determination to bring the force of the federal government to bear against a regulated private party in an enforcement action.

In contrast, in the case *sub judice*, the government seeks substantial penalties from Appellants in an enforcement action filed "in federal court." *Seila Law*, 140 S. Ct. at 2200. The Supreme Court has characterized such enforcement action as the exercise of "quintessentially executive power." *See id.* Such actions, therefore, are those over which presidential accountability is critical. The likelihood of harm to a party subjected to such actions by an agency that was not fully accountable to the President is significant. *See id.*

The inapplicability of the initiation of enforcement action in *Collins* makes that case a poor fit for determining the remedy for a removal protection violation in cases like this litigation or *Seila Law*, where the CFPB brought an affirmative enforcement suit in federal court. In fact, because the CFPB here seeks substantial monetary penalties, this case

involves an even clearer example of quintessential executive power (and thus the importance of presidential oversight) than *Seila Law* itself, where the CFPB sought only injunctive relief. *See* 140 S. Ct. at 2194.

**B.    Unlike *Collins*, this Case Involves the Initiation of Action by an Agency Led by an Official with Improper Removal Protections.**

Another key distinction between this case and *Collins*, with important ramifications for removal-protection violations, is that the agency action taken here was *initiated* by an agency whose head enjoyed improper removal protections at the time, whereas the challenged actions in *Collins* involved only the *continuation* of such actions because the initiation had occurred when the agency head was removable at-will. 141 S. Ct. at 1787–88.

An agency's discretion and determination to initiate executive action involves quintessential executive power where accountability to the President is paramount. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021) ("[T]he choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch.").

Given the importance of presidential oversight in the context of affirmatively initiating agency action, it is unsurprising that *Collins* itself seems to have drawn a distinction between officials who had taken a first-hand role in "*adopt[ing]*" the challenged action, and those subsequent officials who merely "supervised the implementation" of the challenged action. 141 S. Ct. at 1787, 1789 (emphasis in original). Although *Collins* did not elaborate on this possible distinction, removal protections may more likely influence agency determinations that involve the initiation of new enforcement actions. The agency head at the time an action is initiated is clearly identifiable as the person responsible for setting in motion the subsequent chain of events—and accordingly the person most obviously bearing a share of responsibility if the President is displeased with those actions.

Appellants argued below that *Collins* "is distinguishable because there the agency action was *initiated* by an acting director who was removable at will by the President" and "only later was it *implemented* by his improperly insulated successors." JA16–17 (emphases in original) (internal quotation marks omitted). In response, the District Court analogized *Collins* to this case, contending that in both, "the harm caused

by the agency action 'continued … under a succession of improperly insulated Directors,'" but there was "'no reason to regard any of their actions as void'" "because all the directors 'were properly appointed.'" *Id.* (quoting *Collins*, 141 S. Ct. at 1787).

The District Court's analysis erred in several respects. *First*, by relying on the continuation of the enforcement action, the District Court disregarded Appellants' fundamental point that the *initiation* of the enforcement action by an agency led by an officer with unconstitutional removal protections is different than the mere *continuation* of such action. The District Court seemed to believe that merely continuing agency action is sufficient to deny relief, regardless of whether that action had been initiated when the agency was led by an official with improper removal protections.

*Second*, the question here is the remedy for removal protection violations, not for Appointments Clause violations. It is undisputed that the CFPB Directors at the relevant times were all properly appointed, and, under *Collins*, their acts are thus not inherently void, but some acts in particular instances might be void. *See* 141 S. Ct. at 1789. That is precisely what Appellants contend here. But the District Court seemed

to interpret *Collins*' rejection of across-the-board invalidation of all agency actions as a basis to reject Appellants' more limited argument based on the particular action at issue here. That is contrary to *Collins* itself.

*  *  *

These key distinctions between *Collins* and this case appear to explain why Justices Thomas and Gorsuch agreed on the proper remedy in *Seila Law* but then disagreed in *Collins*. In *Seila Law*, they argued that a court "[p]resented with an enforcement request from an unconstitutionally insulated Director" should "simply deny the CFPB's petition for an order of enforcement." 140 S. Ct. at 2220 (Thomas, J., concurring in part and dissenting in part). But in *Collins*, Justice Thomas argued the plaintiffs would be "entitled to a remedy" only if they could "demonstrate that any relevant action by [the officials with removal protections] violated the Constitution." 141 S. Ct. at 1795 (Thomas, J., concurring). Otherwise, he was "reluctant to create a new restriction on a coequal branch and enforce it through a new private right of action." *Id.* at 1794. Justice Gorsuch, by contrast, argued that the proper remedy would be to "set aside" the official's actions because they

were taken "by someone erroneously claiming the mantle of executive power—and thus taken with no authority at all." *Id.* at 1795 (Gorsuch, J., concurring in part).

One likely explanation for this divergence is that *Seila Law* involved an affirmative enforcement suit brought in federal court by the government and initiated by an agency headed by an official with improper removal protections, whereas *Collins* involved none of those things. Thus, the *Seila Law* solution of simply denying the government's enforcement request was thus unavailable in *Collins*.

The limited nature of *Collins* provides further confirmation that the District Court erred by insisting that *Collins*' discussion of remedy controlled the significantly different scenario presented here.

## II. The District Court's Interpretation of *Collins* Is Inconsistent with *Collins* Itself.

Even if the *Collins* determination on remedial relief applies here, the District Court's test for demonstrating entitlement to relief is inconsistent with *Collins* itself.

The majority opinion in *Collins* provided several theoretical examples where a party might definitively demonstrate harm from an improper removal restriction, none of which existed in that litigation. 141

S. Ct. at 1789. But the Court in *Collins* also ultimately remanded the case to the Fifth Circuit on the ground that it was necessary for the Fifth Circuit to evaluate whether there was nonetheless sufficient evidence of harm, as "the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect [of inflicting compensable harm] cannot be ruled out." *Id.* If conclusive evidence of prejudice were required, *Collins* would have ended without remand because the challengers had provided only sparse evidence of prejudice. The Supreme Court's decision to remand indicates that the District Court's understanding of appropriate relief under *Collins* is too circumscribed. The District Court erred by not providing for the possibility that evidence of harm might be sufficient to make an adequate showing of the risk of harm from agency action outside the bounds of proper structural constitutional accountability.

The District Court's error was material here because Appellants have cited considerable evidence that the President was displeased with the CFPB Director and desired to remove him but felt constrained by the statutory for-cause removal provision. *See* Appellants' Brief 61–62. That evidence appears to be sufficient under *Collins* would consider sufficient

to demonstrate entitlement to judicial relief, but at the very least a remand to the District Court would be appropriate so it could consider this evidence.

## III.  The District Court's Test Will Disincentivize Removal Protection Challenges.

By requiring a strict "but for" test, the District Court lost sight of the Supreme Court's oft-stated goal of "creat[ing] incentives to raise" challenges to unconstitutional provisions. *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018); *see Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 879 (1991).

When relief is effectively foreclosed by an evidentiary threshold rarely satisfied, parties will presumably stop bringing such challenges. The effects of this stagnation of law will extend far beyond any single dispute. Secure in the knowledge that removal protections are essentially unchallengeable, officers will be even less accountable to the President. Further, Congress may even be emboldened to create more such provisions across the bureaucracy.

The District Court's test is so improperly stringent here that it is unclear whether even parties seeking *prospective* relief could satisfy it, as challengers would have to make predictions and guesswork about how

the agency or President would act in a counterfactual future timeline. Such a threshold is inconsistent with the historic availability of injunctive relief against ongoing constitutional violations. *See, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). This "negative injunction remedy" is a "'standard tool of equity' that federal courts have authority to entertain under their traditional equitable jurisdiction," *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 540 (2021) (Thomas, J., concurring in part), which dates back to the Judiciary Act of 1789, *see* § 11, 1 Stat. 78, and even earlier in England, *see Armstrong*, 575 U.S. at 327.

The dramatic consequences of the District Court's interpretation of *Collins* are a strong indication that interpretation is incorrect.

## CONCLUSION

This Court should reverse the District Court's order denying Appellants' motion to dismiss, and remand with instructions to dismiss this case.

October 3, 2022                    Respectfully submitted,

                                   /s/ R. Trent McCotter
                                   JENNIFER L. MASCOTT
                                   R. TRENT MCCOTTER

14

Separation of Powers Clinic
Gray Center for the Study of
   the Administrative State
Antonin Scalia Law School
George Mason University
3301 Fairfax Dr.
Arlington, VA 22201
(202) 706-5488
rmccotte@gmu.edu
Counsel for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Fed. R. App. P. 29(a), 32(g)(1).

This brief complies with the type-volume limitation of Rule 29(a)(5) because it contains 2652 words, excluding the parts exempted under Rule 32(f).

The text of the electronic brief is identical to the text in the paper copies.

At least one of the attorneys whose names appear on this brief is a member of the bar of this Court.

The electronic version of this brief has been scanned for viruses using Trend Micro Security Agent, Version 17.851.00, and no virus was detected.

/s/ R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/EFC filing system and that service will be accomplished using the appellate CM/ECF system.

/s/ R. Trent McCotter